UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERASA MATTHEWS,

        Plaintiff,

v.

        Case No. 13-cv-14121
        Honorable Gershwin A. Drain

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#10], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#8], AND AFFIRMING THE COMMISIONER'S DECISION PURSUANT TO 42 U.S.C. §405(g)**

**I. INTRODUCTION**

Plaintiff, Terasa D. Matthews, filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act") on January 10, 2011. *See* Dkt. No. 6-5 at 2-13. Plaintiff alleged her disability began on April 27, 2010. *Id*. The claim was initially disapproved by Defendant, Commissioner of Social Security ("Commissioner"), on May 20, 2011. *See* Dkt. No. 6-4 at 2-20. Plaintiff requested a hearing, which was held on April 13, 2012. *See id.* at 22 ("Request for Hearing"); Dkt. No. 6-2 40-55 ("Hearing Transcript").

In a decision dated May 18, 2012, Administrative Law Judge ("ALJ") Regina Sobrino found that plaintiff was not disabled. *See* Dkt. No. 6-2 at 28-39. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

-1-

review on July 26, 2013. *See id.* at 2-7; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On September 26, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 1. This matter is presently before the Court on cross-motions for summary judgment. *See* Dkt. Nos. 8, 10. For the reasons discussed herein, the Court will **GRANT** Defendant' Motion for Summary Judgment [#10], **DENY** Plaintiff's Motion for Summary Judgment [#8], and **AFFIRM** the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. ADMINISTRATIVE PROCEEDINGS

### A. Governing Law for Administrative Proceedings

The "[c]laimant bears the burden of proving [their] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir.1994); *accord, Bartyzel v. Comm'r of Soc. Sec.,* 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB Program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI Program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). Title XVI benefits are available to poverty stricken adults and children who become disabled. *Id.*

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007). "Disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)(DIB); 20 C.F.R. § 416.905(a)(SSI). The Commissioner's regulations provide that disability is to be determined through the application of the following five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.,* 2008 WL 4793424 (E.D. Mich. 2008) (citing 20 C.F.R. §§ 404.1520, 416.920); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Com'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003) (cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir.2007)). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [Plaintiff] could perform given [her] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g). If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently, and even where substantial evidence supports the opposite conclusion. *See McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### B. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff saw treating podiatrist Keith Daniels, D.P.M., in May of 2010. Daniels diagnosed Plaintiff with chronic left ankle pain, tarsal tunnel syndrome, and a torn posterior tibial tendon. *See* Dkt. No. 6-7 at 24-25. Plaintiff underwent left ankle surgery to repair a torn posterior tibial tendon and tarsal tunnel decompression. *Id.* at 25. Six days after the surgery, Plaintiff went to the emergency room for left ankle pain post-surgery. *Id.* at 19-20.

Plaintiff attended Physical Therapy from June 2010 to November 2010. *Id.* at 16, 27-41. After her June 29, 2010 appointment, Plainitff was off crutches and stated that she "thinks [the] pain is better." Dkt. No. 6-7 at 40. Plaintiff's physical therapist, Cathy Metz, noted during treatment that Plaintiff "couldn't stand for more than twenty minutes initially, but now can stand for forty-five minutes." *Id.* at 39. At discharge, in November of 2010, however, Ms. Metz noted that claimant had achieved her goal of ambulating with a normal gait and standing for at least two hours. *Id.* at 16.

In November 2010, Plaintiff was evaluated for a custom left ankle orthotic brace. *See* Dkt. 6-7 at 47-50. At her fitting appointment on December 8, 2010 the orthotic fit was deemed "excellent" and it was noted that Plaintiff was able to ambulate 300 feet. *Id.* at 51. Following her orthotic fitting, Plaintiff attended follow-up appointments with Dr. Daniels through May 2011. *Id.* at 56, 77-78.

In May 2011 Plaintiff was referred to neurologist M.N. Sabbagh, M.D. to address complaints of back pain and bilateral foot pain. Dr. Sabbagh observed that Plaintiff had a somewhat antalgic gait and a mild decrease in bilateral grip strength. There was a positive Tinel's sign over the left medial malleolus. However, Dr. Sabbagh noted that Plaintiff exhibited normal strength, tone, and bulk in all four extremities with no significant tenderness and a negative straight leg-raising test. Dr. Sabbagh assessed Plaintiff with chronic back pain and "vaguely described radicular symptoms," with no objective findings. *See* Dkt. No. 6-7 at 87-88.

In May 2011, Plaintiff also underwent a consultative examination by Asit K. Ray M.D. Dr. Ray noted that claimant ambulated normally, without any limp or assistive device. Plaintiff had non-tender ganglion on the wrists, but had a normal range of motion in the shoulders, elbows, wrists, knees, and ankles. Plaintiff's neurological examination was intact. The impression was history of pain in both feet status post tarsal tunnel release in the left ankle and lower back pain by history. *See* Dkt. No. 6-7 at 58-66.

Plaintiff continued follow-up appointments with Dr. Daniels through December 2011. *See* Dkt. No. 6-7 at 75-77, 80. In January 2012, Dr. Daniels stated that the claimant ambulated with an antalgic and pronated gait. Dr. Daniels noted that the claimant showed some swelling around the bilateral subtalar joints and tenderness in the bilateral hindfeet. Dr. Daniels diagnosed osteoarthritis. *Id.* at 81; *see also id.* at 72.

In February 2012, the Plaintiff returned to Dr. Sabbagh, whereupon Dr. Sabbagh observed that Plaintiff "never had the recommended testing or follow-up." Dkt. No. 6-7 at 85. Upon examination, Dr. Sabbagh stated that the claimant ambulated with a steady gait on a narrow base. Dr. Sabbagh added that Plaintiff "has a tendency to give way in all muscle groups and best effort is 5-/5." *Id.* An EMG was normal, with no evidence of mononeuropathy, polyneuropathy, plexopathy, radiculopathy, or myopathy affecting the right or left upper extremity. Dr. Sabbagh concluded that Plaintiff "continues to have a lot of pain in different areas of the body with numbness and tingling," but that "her examination is not showing any objective findings and the MEGs have failed to show any nerve or muscle injury." *Id.*

At a March 2012 appointment, Dr. Sabbagh observed that Plaintiff "jumps in pain on testing all muscle groups with poor effort." Dkt. No. 6-7 at 82. However, Dr. Sabbagh noted that Plaintiff exhibited no atrophy or fasciculation. An MRI of Plaintiff's lumbar spine showed some degenerative changes in the facet joints, but no spinal stenosis or herniated disc. Dr. Sabbagh explained that the MRI "[d]efinitely does not explain the pain in her lower extremity." *Id.* Dr. Sabbagh did not make a formal diagnosis, but did suggest that Plaintiff's symptoms may be the result of fibromyalgia or somatoform pain. *Id.*

B.D. Choi, M.D., a medical consultant, completed a physical residual functional capacity assessment of Plaintiff for the State agency in May 2011. Dr. Choi opined that the claimant could perform the requirements of light work. Dr. Choi also noted that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb, but should avoid concentrated exposure to vibration and hazards. *See* Dkt. No. 6-3 at 8, 18. In January 2012, Dr. Daniels opined Plaintiff would be unable to work secondary to exacerbations and remissions. *See* Dkt. No. 6-7 at 72.

-6-

**C. ALJ's Findings**

Plaintiff was 33 years of age at the time of the most recent administrative hearing. *See* Dkt. No. 6-2 at 43. Plaintiff had past relevant work history as an automotive assembler. *See id.* at 34. The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 27, 2010, the alleged onset date. *See id.* at 30. At step two, the ALJ found that Plaintiff's degenerative joint disease and obesity were "severe" within the meaning of the second sequential step. *See id.* at 30-31. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *See id.* at 31. At step four, the ALJ found that Plaintiff could not perform her previous work as an automotive assembler. *See id.* At step five, the ALJ relied upon testimony of a vocational expert and denied Plaintiff benefits because Plaintiff could perform a significant number of jobs in the national economy. *See id.* at 35.

**D. ALJ's Conclusion**

In making her decision, the ALJ gave significant weight to Dr. Choi's opinion because the ALJ found "it is supported by the medical evidence and the record as a whole." Dkt. No. 6-2 at 33. To the contrary, the ALJ gave little weight to the opinion of Dr. Daniels because the ALJ found "it is not supported by the clinical findings, the diagnostic test results, and treatment history." *Id.* at 34.[1]

After explaining inconsistencies between the medical and clinical findings and the opinion of Dr. Daniels, the ALJ concluded that Plaintiff had the residual functional capacity to

---

[1] Specifically, the ALJ went through all of the medical evidence to explain the inconsistencies between Dr. Daniels' January 2012 finding that Plaintiff "ambulated with an antalgic and pronated gait," and Dr. Sabbagh's finding in February 2012 that Plaintiff "ambulated with a steady gait on a narrow base. Strength was 5-/5. An EMG was normal." Dkt. No. 6-2 at 33-34. The ALJ also noted that the physician who conducted Plaintiff's March 2012 MRI of her lumbar spine noted that the MRI "definitely does not explain the pain in [Plaintiff's] lower extremity." *Id.*

-7-

perform light work as defined by federal regulations. *See* Dkt. No. 6-2 at 31.[2] In addition to her findings, the ALJ included the following limitations: no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; no exposure to hazards or vibration; no use of foot or leg controls; and should be able to wear orthotics in the shoes while working. *Id.* at 31, 34. The ALJ indicated that Plaintiff's "residual functional capacity is supported by the medical evidence, the [Plaintiff's] activities of daily living, and the treatment history." Dkt. No. 6-2 at 34. Plaintiff is now challenging the ALJ's findings.

### III. LAW & ANALYSIS

#### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen,* 800 F.2d at 537.

---

[2] According to Federal regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b); 20 C.F.R. § 416.967(b).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997).

In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1 984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers,* 486 F.3d at 247; *Jones,* 336 F.3d at 475 (stating an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse,* 502 F.3d at 542 (stating the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96–7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. *See* 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support

a different conclusion." *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones,* 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky,* 35 F.3d at 1035 (citing *Mullen,* 800 F.2d at 545) (citations omitted).

The scope of this Court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512–13; *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.,* 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B. LEGAL ANALYSIS

Plaintiff maintains that the Commissioner failed to satisfy its burden of demonstrating that the Plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See* Dkt. No. 8 at 7. Plaintiff contends that she is incapable of performing the jobs identified by the ALJ because "each of these jobs requires sitting or standing for extended periods of time, lifting, reaching, and extending of both arms, and possibly bending,

kneeling, or crouching – any of which might cause severe irritation to Ms. Matthews's lumbar spine." *Id.* at 10-11.

Plaintiff argues that because the Commissioner relied on testimony from a vocational expert, the vocational expert's testimony must have "been given in response to a hypothetical question that accurately describes the Plaintiff in all significant, relevant respects[.]" *See* Dkt. No. 8 at 8 (quoting *Felisky*, 35 F.3d at 1036). In order "for a response to a hypothetical question to constitute substantial evidence," Plaintiff contends that "each element of the hypothetical must accurately described the claimant." *Id.* (quoting *Felisky*, 35 F.3d at 1036).

Here, Plaintiff contends that "each element of the hypothetical [question] did not accurately describe Ms. Matthews in all significant, relevant respects[.]" *Id.* For this reason, Plaintiff argues the vocational expert's "testimony at the hearing should not constitute substantial evidence." *Id.* Specifically, Plaintiff contends that the ALJ erred because she "would need a sit/stand option, which was not given in the hypothetical." *Id.* at 9.

Lastly, Plaintiff contends that the ALJ failed to adequately evaluate her credibility. According to the Plaintiff, "the reasoning to support [the Commissioner's finding of Plaintiff's] lack of credibility is not substantiated." *Id.* at 10. Specifically, Plaintiff argues "[i]t is erroneous to reason that if Ms. Matthews can perform some mild, every day, or even, once a week activities, that she would be more credible. The limitations that Ms. Mathews faces effectively preclude her from performing any work, including the listed representative occupations[.]" *Id.*

In response, the Commissioner argues that Plaintiff's arguments really only challenge the ALJ's credibility determination. *See* Dkt. No 10 at 9. The Commissioner sums Plaintiff's argument up as follows: "Plaintiff essentially argues that she testified to work-preclusive limitations, the ALJ did not adopt those limitations, and thus, the ALJ erred." *Id.* According to

the Commissioner, "[t]his argumentation is inadequate to avoid waver[,]" because "[d]espite Plaintiff's recitation of her testimony, she fails to explain why it was erroneous for the ALJ to decline to accept it." *Id.*

The commissioner also notes that Plaintiff's brief consists of undeveloped arguments similar to those that several Judges in this Court have admonished Plaintiff's counsel for advancing. *See* Dkt. No. 10 at 8 (citing, amongst other cases in this District where Judges have admonished Plaintiff's counsel for advancing undeveloped arguments, *Deguise v. Comm'r of Soc. Sec.*, No. 12-10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb. 19, 2013) (Hluchaniuk, M.J.), for the proposition that "Plaintiff's arguments regarding the assessment of his credibility and any inconsistency or error in the VE's testimony . . . are so woefully underdeveloped that they need not be considered any further.").

After reviewing the briefs of the Parties, the Court agrees with the Commissioner. Plaintiff's arguments regarding the ALJ's credibility determination are undeveloped and fail to establish that this matter should be remanded for lack of substantial evidence. Similarly, Plaintiff's argument regarding the hypothetical question posed to the vocational expert by the ALJ in this case is also not compelling.

> **i)** **Plaintiff's argument regarding the ALJ's credibility determination is undeveloped and unsupported by the record.**

An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir. 1986). The credibility determination is guided by SSR 96–7p, which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F. 2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by

medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96–7p mandates that "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

Federal Regulations list the factors to be considered in evaluating whether a claimant's symptoms are disabling:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

C.F.R. 404.1529(c)(3), 416.929(c)(3). Plaintiff argues it was erroneous for the ALJ to reason that "if Ms. Matthews can perform some mild, every day, or even, once a week activities [] she would be credible." *See* Dkt. No. 8 at 10.

Plaintiff broadly quotes Judge Posner in the Seventh Circuit to support her position that the ALJ erred by not recognizing the difference between activities of daily living and activities in a full-time job. *Id*. Curiously, Plaintiff quotes Judge Posner, yet fails to cite the source of the quotation. Nonetheless, after doing some research, the Court did find a quotation from Judge Posner similar to the quotation given by Plaintiff, which reads:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citations omitted). Judge Posner does, indeed, admonish ALJ's for failing to distinguish between daily activities and activities required for a full time job. Critically, however, this was not Judge Posner's sole basis for remanding the case. Judge Posner remanded the case because he determined the ALJ "failed to build a bridge between the medical evidence . . . and the conclusion that she is able to work full time in a sedentary occupation provided that she can alternate sitting and standing." *Bjornson*, 671 F.3d at 649.

The Court acknowledges that the ALJ considered some of Plaintiff's everyday daily activities, and determined that they were "not consistent with disabling symptoms." Dkt. No. 6-2 at 33. However, contrary to what Plaintiff implies, the ALJ did not solely rely upon Plaintiff's daily activities and determine that "[t]his alone did not show an ability to work." Dkt. No. 8 at 10. Instead, the ALJ permissibly determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not fully credible because they are not *fully supported by objective medical and other evidence of record*." Dkt. No. 6-2 at 33 (emphasis added).

The Court finds that the ALJ adhered to the procedural and substantive requirements of SSR 96–7p. While ALJ's should recognize the difference between daily activities and full-time jobs, it is not inappropriate for an ALJ to consider daily activities when weighing a claimant's credibility. *See* 20 C.F.R. § 404.1529 (c)(3)(i). Moreover, the ALJ relied on more than just the daily activities of Plaintiff in making her decision. The ALJ also relied upon the medical opinions and objective medical evidence in the record.

Upon reviewing the medical opinions and objective medical evidence, the ALJ determined that the findings of Plaintiff's treating physicians weighed against finding Plaintiff's purported limitations fully credible. As the Commissioner points out:

> The ALJ noted that treating physicians indicated that objective findings did not support Plaintiff's complaints of disabling limitations (for example, "her exam is not showing any objective findings and the EMGs have failed to show any nerve or muscle injury").The ALJ also [] found that Plaintiff's treatment following surgery in 2010 on her left ankle — medication, physical therapy (with goals achieved), and orthotics — was inconsistent with her allegations of disabling pain. Indeed, as the ALJ detailed earlier in her decision, Plaintiff was discharged from physical therapy after achieving her physical therapy goals, including being able to walk with a normal gait and being able to stand for more than two hours.

Dkt. No. 10 at 10 (citing Dkt. No. 6-2 at 32) (internal citations omitted). Not only did the ALJ focus on inconsistencies regarding Plaintiff's alleged limitations and the objective findings of her treating physicians; the ALJ's assessment of Plaintiff's alleged limiting symptoms and Plaintiff's residual functional capacity was supported by the opinion of state agency reviewing physician, B.D. Choi, M.D. *See* Dkt. No. 6-3 at 7 (finding Plaintiff's statements about her symptoms partially credible).

As the Commissioner points out, "Dr. Choi opined that Plaintiff retained the ability to perform light work on a sustained basis with certain postural limitations. The ALJ gave significant weight to Dr. Choi's opinion and his opinion provide[d] substantial evidence supporting the ALJ's decision." *See* Dkt. No. 10 at 11 (citing 20 C.F.R. § 404.1527(d)(2)(i) for the proposition that a "state agency physician is highly qualified expert in Social Security Disability Evaluation.") (internal citation omitted); *see also* Soc. Sec. Rule, 96-6P, 1996 WL 374180, at *2 ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Notably, Plaintiff does not contest the weight the ALJ gave to the medical opinion evidence. Further, Plaintiff never seriously addresses the inconsistencies between her claims and the findings of the treating physicians. The Court agrees with the Commissioner that the ALJ's decision is supported by substantial evidence, especially in light of the fact that "the uncontradicted opinions of treating physicians are entitled to complete deference." *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 n.7 (6th Cir. 1991)). Accordingly, the ALJ's findings should be afforded due deference and the latitude generally ceded to an ALJ's credibility determination. *See Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *Mullen* , 800 F.2d at 545.

### ii) The ALJ did not err in positing her hypothetical question.

Plaintiff's argument regarding the ALJ's hypothetical is also unconvincing. Plaintiff argues that the case should be remanded because the Commissioner erred by not mentioning a "sit/stand option" when providing a hypothetical to the vocational expert in the case.[3] According to Plaintiff, because a sit/stand option was not provided to the vocational expert, the hypothetical was flawed. *See* Dkt. No. 8 at 9.

However, Plaintiff points out that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, <u>but only</u>

---

[3] The ALJ posed the following hypothetical question to the vocational expert in the case:

> [I]n your analysis, you list Ms. Matthews past job as an automotive assembler, a medium job, and unskilled. Please assume someone who has done that work, and I'd like you to assume a person who has a high school education. Assume a person born in 1978. Assume a person who is limited to light work as that term is defined in the Social Security regulations and in the <u>Dictionary of Occupational Titles</u>. But in addition, the person should not need to climb ladders or crawl, can only occasionally climb stairs, stoop and crouch. The person should not be exposed to hazards or vibration and should not have to operate foot or leg controls.

Dkt. No. 6-2 at 51. Additionally, the ALJ asked the hypothetical with the additional limitations that the person was "limited to frequent handling, fingering and reaching" and "a person were to wear orthoses inside their shoes while they work." *Id.* at 51-52.

'if the question accurately portrays [plaintff's] individual physical and mental impairments.'" Dkt. No. 8 at 7 (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)) (brackets and emphasis in original). In this instance, the Court should find that the question accurately portrayed the Plaintiff's impairments.

As discussed, the ALJ permissibly discounted Plaintiff's testimony that she needed a sit/stand option because it was inconsistent with, and not fully supported by, objective medical and other evidence in the record. *See* Dkt. No. 6-2 at 33. The ALJ properly incorporated her findings, which discounted Plaintiff's purported inability to sit, into the hypothetical question. *Cf. Rodriguez v. Comm'r of Soc. Sec.*, No. 08-11529, 2009 WL 236077, at *5 (E.D. Mich. Jan. 29, 2009) (noting that the "ALJ was arguably permitted to reject Plaintiff's allegations [of certain limitations]," and noting that the ALJ only erred in posing the hypothetical in that case because the ALJ failed to include his own findings regarding the plaintiff's limitations in the hypothetical).

The ALJ was not required to include the sit/stand limitation in her hypothetical question. *See*, *e.g.*, *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118–119 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."); *see also Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927–28 (6th Cir. 1987). Accordingly, contrary to Plaintiff's assertions, the hypothetical given by the ALJ was not flawed.

## IV. CONCLUSION

For the reasons discussed, the Court agrees with the Commissioner. Plaintiff may disagree with the ALJ's ultimate credibility assessment, but after reviewing the record the ALJ's assessment was well within the zone of reasonable choices. *See Mullen*, 800 F.2d at 595. As discussed, the substantial evidence standard presupposes there is a zone of choice within which the decision maker can go either way, without interference by the courts. *Felisky,* 35 F.3d at 1035; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). The ALJ provided a reasonable explanation for discrediting Plaintiff's asserted limitations. Significantly, the explanation was supported by substantial objective medical evidence.

For these reasons, the Court **GRANTS** Defendant' Motion for Summary Judgment [#10], **DENIES** Plaintiff's Motion for Summary Judgment [#8], and **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

SO ORDERED.

Dated: January 30, 2015

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge